Alright, welcome to the East Court. First case up is United States v. Michael Lord. Mr. Kormoos, you're up, sir. Good morning, Your Honor. Should I identify myself? This is my first time here in many years. We've got you, Mr. Kormoos. You're in good stead. Thank you. But all candor, Mr. Kormoos, is from my neck of the woods in Shreveport, so in all these many years, he's never had to look at me in the eye from this. Except in the district court, the state district court. Exactly. So if he's not as smooth as he'd like to be, it's because it's a site he's not anticipated. No, Mr. Kormoos, you're good. You're on, sir. Your Honor, as you know, this case involves sales and transfers of bitcoins. And I'd like to start by saying when we first got involved, when I first got involved with the Lords and the charges against them, in fact, the government had just subpoenaed a lot of records from them concerning their transactions of bitcoins. And when we started looking at the law involved, we could not find that one of the main violations was that they were selling bitcoins or transferring bitcoins without a license from the state of Louisiana. We searched, questioned Louisiana government agencies, and we couldn't find out if there was such a thing as a license to sell bitcoins or transfer bitcoins in the state. And as this case went along, there was volumes of records, paper records, documents from their bitcoin transfers. And when it got down to it, the defendants and I discussed, and the weight, the sheer weight of the evidence, we felt with all of those documents that there would probably be a guilty verdict if we went to trial. Initially, we attempted to plead reserving our right to appeal. The main issue, which we believed, was that there was no license. And at the time of the plea, we still believed that Louisiana must have had a license. Maybe it was my and our naivete when we said the government surely wouldn't charge these people for selling bitcoins without the required license if there was, in fact, not a license. And it wasn't until after the plea but before sentence that we did discover, and the government conceded at that point, that Louisiana didn't have a license. So that's when we attempted to file a motion to withdraw our guilty plea. Even taking that as true, as I understand it, the way the government charged it disjunctively so that even with them conceding that there was no need for a Louisiana license, wouldn't the charge or the way they were indicted still have stated a charge that if you put that into your equation, given the weight of all the evidence, blotty, blotty, blotty, how does that alter the calculus, if it does at all? Well, and I'm having a little trouble hearing your question. Well, my question is that when I first approached it, I thought it was like a case of where basically you pled guilty to something to which the government could never prove an element of it. So you pled guilty when the government can't prove it. But the way I understood it, and I could be wrong, is that they pled, I don't mean pled, indicted the violation as if a Louisiana license was required, but they also indicted or in any other part of it. So even if you pull out the Louisiana license part, was the indictment still sound in its face? So coming back to your opening remark that having looked with your clients at the weight of the evidence before the jury, etc., how does that factor into the equation of an abuse of discretion or not by the district court, not allowing withdrawal of the plea? You follow what I'm saying? I'm just saying how does it fit in the way the government charged alternatively? Well, there was the registration requirement, I guess, and there was a period of time when the Lords weren't registered with FinCEN, but as soon as they discovered that they should have been registered, they did, and they registered in November of 2014 with FinCEN and then met those requirements. And we, and of course as part of the plea, the Rule 11 plea package, we, the government had agreed to dismiss all other charges. And that, at that point, was what we thought was the best course of action until we found out that there was no Louisiana license, and we felt that was a major part of the charge. And then once we filed our motion to withdraw, which was denied, we felt like we met all seven factors that the courts considered when they decide whether or not someone could withdraw a plea of guilty. The, of course, the first factor, they were asserting their innocence when, because they weren't guilty of not having a license without there being a license. That, and we failed to see how the government would suffer prejudice by allowing the withdrawal of the plea. Whether the defendant delayed filing the motion to withdraw, we feel like we did it as quick as we could, as quick as we found out, and that there was no law. There were a number of people, I think, around the country and in Louisiana that were in that business, and even those people were questioning, is there a license? Should we get a license? What are we doing if we want to stay in this business? We don't feel like the withdrawal would substantially inconvenience the court. Courts inconvenience any time a defendant says not guilty and wants to go to trial. Now, whether they had good counsel or close assistance of counsel, we feel like we did. We were trying to find out about the license but couldn't, and we feel like the number six factor that they knowingly pled, they assumed there was a charge and they pled based on what they thought was the best course of action at that point. You agree that the standard of review is abuse of discretion? I'm sorry? Do you agree that the standard of review with respect to the ability to withdraw the guilty plea is abuse of discretion? Yes. With that said, then, what's your best . . . I mean, assuming the force of your argument, which I take it you similarly presented to the trial judge, right? I did, yes, sir. With the standard of review being abuse of discretion, what's your best case or strongest impetus for us to reverse because of that standard of review? I mean, even if we were to say, yeah, if I'd have been there, I might have let him withdraw it, but because the standard of review is abuse of discretion, what's your strongest case or best thrust that this is a case where that standard ought to be applied in favor of your client? Well, we just feel like this wasn't your ordinary criminal charge, bank robbery, any of those sorts of things. Bitcoins, I can recall, and, of course, this was not in the record, but when we met with the U.S. Attorney, we met with the trial judge, there were questions in those meetings like, what is a Bitcoin? What are we dealing with? Is it a currency? Is it something that can be controlled by the government? And I think most of us would admit that we know what they are, but we still don't know how it works. How can you buy that and then use it to buy other things? It's a totally new way of banking, I guess, or using currency. And we still believe that with the Treasury agents, the IRS agents, and those people that investigated this case, we felt like it was almost not that we were tricked, but it was almost like saying, well, the government wouldn't be doing this if this wasn't, if a Louisiana license wasn't required. And, you know, the fact that if I could go past that, and this has happened once before, to me at least, when you attempt to file a motion to withdraw a guilty plea and you lose, they take away your acceptance of responsibility points. And to me that's sort of a chilling effect, that it's like saying you go to trial, if you don't plead guilty and you go to trial, you're going to get more time. You don't say that, but you know you're going to get more time than if you plead guilty. And we feel that it has that same chilling effect on a motion to withdraw a guilty plea if you know that if you lose, you're going to lose points. And it's, to me, not the way it's supposed to be. I don't think that's a just answer. I can understand if we had absolutely no reason to file the motion to withdraw the plea, if it was frivolous. We don't feel like it was a frivolous motion in that the denial, I think, caused the points to go up. The fact that $2.5 million was used sort of as relevant conduct up the points by 16 and took a zero to six-month exposure all the way up to 60 months. And that those numbers we just feel like were totally out of sorts with what this crime was. There was no loss to anyone. Nobody lost anything. There was no fraud. In fact, the only loss was when the Lords were using a credit card processing company to do some of the Bitcoin transactions. If someone submitted a fraudulent credit card, maybe a stolen credit card, to pay for Bitcoins, whenever that happened and there was a loss, the loss was against the Lords. They had to pay for whatever the difference was when the losses took place. And if I could jump right ahead to Michael Lord, who had an additional number of points added because of some distribution of homemade Xanax. And in that case, Michael Lord, he got points because he had, you know, they said he used premises or controlled premises that created that crime. Well, the premises were the home of the snitch who turned Michael Lord into the federal agents. They also took points away from him or added points for a special skill with computers. Well, he may have been a self-taught computer. I wouldn't say whiz, but he knew about computers. But he didn't have no special training. And we feel like those points and the special skill points were added. Examples are a pilot, a lawyer, a doctor, not some self-taught kid who knew a lot about computers. And like most people today, most young people know a lot more about computers than we do. He did. But we didn't feel like that should add points to his sentencing level. All right. All right. Thank you, sir. You have reserved your rebuttal time to come back to us. All right. We'll hear from Mr. Handel. Good morning, Your Honors, and may it please the Court. Josh Handel for the United States. This Court said in United States v. Carr that a district court's decision on a defendant's motion to withdraw his accepted guilty plea must be accorded broad discretion. The district court acted within that discretion here. Beginning with Carr in 1984 and in case after case since then, this Court has consistently evaluated the strength of a defendant's actual innocence assertion as the primary benchmark for determining whether there is a fair and just reason to permit plea withdrawal. Here, the defendants have not made out a plausible claim of actual innocence for two reasons. First, in the proceedings below, they acknowledged that they were guilty of failing to timely register with FinCEN as required by federal law. Second, they have not adduced any exculpatory evidence on that point or articulated any defenses that would vitiate their criminal liability under the federal registration theory that was outlined on the face of the indictment. 18 U.S.C. 1960 is violated when a money-transmitting business does not comply with federal regulations. Federal regulations require that Bitcoin exchanges, like the one that the defendants were operating, register with FinCEN within 180 days of their establishment. The defendants did not register their exchange until long after that period had elapsed, and in the meantime, they exchanged over $2.5 million in Bitcoin transactions that were unregulated and unreported. All of that is undisputed, and more importantly, all of that was admitted in the district court proceedings. At the change of plea hearing, an IRS criminal investigations agent testified to three facts that are relevant to this question. First, he testified that exchangers of virtual currency, like the defendants, are required to register with FinCEN. Second, he testified that the defendants were informed by their primary Bitcoin counterparty, Coinbase, of their need to register. And third, he testified that the defendants did not timely register. In the colloquy that the district court conducted with the defendants following that testimony, the court asked each defendant individually whether he had listened to that testimony and whether he had any substantial disagreement with it. Both defendants said that they agreed with the testimony. On the basis of their acquiescence, the district court accepted that testimony as the necessary factual predicate for entry of the guilty pleas. Also later, when the parties were litigating about some of the sentencing factors that have come up on appeal, the defendants admitted in their objections to the pre-sentence report that they had pleaded guilty to both not having a state license and not registering in a timely manner with FinCEN. Now on appeal, the defendants say that they've always believed that they had valid defenses to the federal registration theory, but they haven't articulated what those defenses might be or offered any evidence in support of them. As this court said in Carr and Harrison and a number of other decisions, a defendant's assertion of actual innocence alone, without supporting evidence, is insufficient to warrant allowing withdrawal under Carr. As far as the government is aware, there's only one set of circumstances in which this court has said that plea withdrawal is appropriate absent an objective and evidenced assertion of actual innocence, and that's when the defendant clearly did not understand what right he was waiving. So, for example, this court held that plea withdrawal should have been allowed when a defendant was, when a defendant entered an unconditional guilty plea in reliance on his attorney's incorrect assertion that he would be able to appeal a suppression ruling after entry of the plea. When it turned out that entering this plea foreclosed him from appealing that earlier suppression ruling, this court said he should have been allowed to withdraw the plea because he clearly did not understand the scope of the right that he was waiving. Nothing like that happened in this case. As evidenced by their written plea agreements, by the fact that they were well represented by experienced trial counsel throughout the proceedings, and by their colloquy with the district court at the change of plea hearing, the defendants were well aware that they were foregoing their right to mount a defense at trial. We think that the remaining Carr factors, in particular delay, also support the government's position, but as you said in United States v. Benavides, considerations like timing, prejudice, inconvenience don't bear on the analysis until and unless the defendant first shows a good reason for being allowed to withdraw his plea. Because the defendants here have not met their threshold burden of a good reason to withdraw their plea, the district court was certainly within its discretion in denying their motion. Unless the court has further questions on plea withdrawal. Just a quick one on the special skill enhancement. Opposing counsel mentions how computer savvy young people are generally, and chime in there. How technologically savvy would the average computer user need to be to Google some software, to download it, to encrypt what they're doing? Is that a special skill tantamount to piloting aircraft or performing surgery, or is that something that anybody who's halfway computer literate can do these days? Well, Judge Willett, I think it certainly qualifies as a special skill. So Guidelines Section 3B1.3 requires that a special skill be one that is not possessed by members of the general public. I think if you look at the full suite of Michael Lord's cybersecurity and computer encryption capabilities, he plainly qualifies. You know, in the record, Michael holds himself out as having expertise in cybersecurity. He tells his co-conspirator that I'm good at security. He sends Mr. Ligari, his co-conspirator, various articles and training manuals in order to bring Mr. Ligari up to a point where he can at least intelligently communicate with Michael about this, because Michael's skills are so far beyond what Mr. Ligari's were, and what even a normal, relatively savvy, young millennial Internet user would have. At Michael's urging, they communicate through four different encrypted apps, Pigeon, Signal, SwissJabber, and Wicker. They use a special operating system, the amnesic incognito live system, which I had not heard of before this case. They use an individualized PGP encryption key that Michael sets up for them. Again, I would not know how to set something like that up for them. And so I think it's fair to, you know, as the standard of review says, look at the totality of the circumstances, look at the entirety of the record, and say, with all of these different skills that go into this suite of capabilities, does Michael Lord qualify under the special skills enhancement? I think the answer is yes. And just another point on that, even if we could pull out one or two of these skills and say, well, you know, maybe I could Google around for how to set up a PGP encryption key, and by the end of a couple of days or a couple of weeks, I would be able to do that to some degree of confidence. Again, I think that you have to look at, you know, first of all, would you even know that that's something that exists? Would you know that that's something that you should use and for what purpose it would be used? And then, again, under the totality of the circumstances here. So I think the special skills enhancement applied. The district court did not clearly err or abuse its discretion in applying that sentencing enhancement. Unless the court has further questions, then I ask you to affirm the judgment below. Thank you. Thank you. Mr. Kormush, you have rebuttal. Yes. Do you want to touch on the special skill issue that he mentioned? Yes, Your Honor. And the special skills, as we said, that we didn't notice any special skills, that being able to encrypt or do things like that, a lot of self-taught people that use computers are able to do that. And then that part is not what we believe the Guidelines Commission set up, that special skills area. And I don't know if I'm permitted to discuss the premises of two points for having control of a premises. That, as the government has said, those premises were a co-defendant's or a co-conspirator's home, the father's home. We don't think that, as I recall, there was no evidence ever presented in the record that Michael Lord had ever been to that place. And apparently in that case what happened is some fake Xanax or ingredients were shipped in from maybe China to Arkansas, and Al Ligari, where the items were, got arrested. And in return for being prosecuted, he said, I can get this young man in Shreveport, Michael Lord, to come and get involved in this. And it was through those reasons that Lord, Michael Lord, got charged and ended up pleading guilty to that charge. And, of course, it added 60 months to his sentence. Neither Michael Lord or Randall Lord had any prior criminal history, and we believe that the sentences that they got was an abuse of discretion. You heard the government. I forgot the dollar amount he was, although you argued no loss, I forget how big a number he gave. Yes, sir. From the impact, any response on that? And as far as the guilty plea, Your Honor, we did appear in court to plead guilty initially. And when the Lords were questioned about the things that they ultimately had to agree to, they initially said no. And we were told, y'all need to discuss this and come back in a couple of weeks and make up your mind whether you're pleading guilty or not. And, of course, it's the same thing that's always the issue. You either accept that as is stated in the Rule 11 package or you don't. And we chose to, because of the weight of evidence, to do what we did. All right. Thank you, sir. All right. Thank you, counsel, both sides, Mr. Cummings, Mr. Handel, for the briefing and argument. The case will be submitted and we'll decide it. All right. We call up the next case.